**** CASE NUMBER: 502016CA011097XXXXMB Division: AE ****

*10/4/16*
*3:49pm*
*AB 4/14/16*

Filing # 47101153 E-Filed 09/29/2016 03:45:58 PM

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH, FLORIDA

CASE NO.:

JEREMY DEROSA,

       Plaintiff,

vs.

THE TOWN OF PALM BEACH,
KAREN TEMME, and BRODIE ATWATER,

       Defendants.

_____/

**CIVIL ACTION SUMMONS**

**S U M M O N S:**
**PERSONAL SERVICE ON A NATURAL PERSON**

TO:    **Karen Temme**
       **Office of Risk Management**
       **360 South County Road**
       **Palm Beach, FL 33480**

**I M P O R T A N T**

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this Court, Circuit Civil Division, Palm Beach County, Florida. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

TOWN OF PALM BEACH

OCT 0 4 2016

Town Manager's Office

**EXHIBIT**
**A**

Patrick E. Quinlan
Florida Bar No.: 750263
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Plaintiff Attorneys

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE COMMANDED to serve this summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

DATED on ___Sep 30 2016___, 2016.

CLERK OF THE CIRCUIT COURT (SEAL)

BY: _____
                    Deputy Clerk

Nidia Rios Gonzalez

"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact, Americans with Disabilities Act Coordinator, Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County, 205 N Dixie Highway, West Palm Beach, FL 33401 (561) 355-4380, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda.     Tenga la amabilidad de ponerse en contacto con Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County, 205 N Dixie Highway, West Palm Beach, FL 33401 (561) 355-4380 , por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte Tammy Anton, Americans with Disabilities Act Coordinator, Palm Beach County, 205 N Dixie Highway, West Palm Beach, FL 33401 (561) 355-4380 , nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

Filing # 47101153 E-Filed 09/29/2016 03:45:58 PM

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH, FLORIDA

JEREMY DEROSA,                                              CASE NO.:

     Plaintiff,

vs.

THE TOWN OF PALM BEACH,
KAREN TEMME, and BRODIE ATWATER,

     Defendants.

_____/

## COMPLAINT

Plaintiff, JEREMY DEROSA ("DeRosa") sues THE TOWN OF PALM BEACH ("the Town"), KAREN TEMME ("Temme"), and BRODIE ATWATER ("Chief Atwater" or "Atwater"), and states:

### JURISDICTION AND VENUE

1.    Venue is proper in Palm Beach County, Florida, because the conduct from which the causes of action arise occurred in Palm Beach County, Florida.

2.    All Defendants are either residents of, and/or are employed within, Palm Beach County, Florida. The causes of action arose in Palm Beach County, Florida.

3.    This is an action for damages exceeding Fifteen Thousand ($15,000.00) Dollars, exclusive of interest and costs.

### PARTIES

4.    Defendant Town of Palm Beach is a town in Palm Beach County, Florida.

5.    As described herein, Plaintiff DeRosa was an employee of the Town.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 2 of 19

6.      Defendant Atwater is and was the Assistant Chief of the Palm Beach Fire Rescue

Department (the "Department").

7.      Defendant Temme is and was the Risk Manager for the Department.

## GENERAL ALLEGATIONS AND BACKGROUND

8.      Plaintiff DeRosa is a 28-year-old man who has suffered, and continues to suffer,

years of hardship after being targeted and discriminated against by Defendants Atwater, Temme

and the Town.

### *DeRosa's Training and Hiring*

9.      DeRosa attended high school in Palm Beach County and dreamed of becoming a

firefighter. Once he graduated, he joined the Palm Beach County Fire Academy, where he was

honored by being named the Outstanding Firefighter Candidate for his dedication to the job and

performance throughout his training.

10.     On August 18, 2008, DeRosa was hired by the Town as a Firefighter/Paramedic.

Over six hundred applicants applied for the position, and DeRosa was one of only three applicants

hired.

11.     DeRosa was a model Firefighter/Paramedic and an exemplary employee at the

Department.  He was well respected by both his fellow colleagues and his supervisors. DeRosa

proudly served the citizens of the Town for five years.

### *The Comments*

12.     In late 2011, the local police and firefighters learned that the Town Council planned

to strip them of many of their benefits and dramatically cut their pension. For the men and women

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 3 of 19

who risk their lives to protect the community on a daily basis, this news was both shocking and disheartening. Many saw the move as a slap in the face. As the Council hacked away at the pensions and benefits of the Town's finest, a mass exodus ensued. Dozens of veteran police officers and firefighters left to work in other states, counties, or municipalities, or applied for employment in other areas that would allow them to provide for their families.

13.    Although he was equally frustrated, DeRosa loved his job and remained loyal to the Town.

14.    As the details of cuts continued to be made public, the Town announced that many of the Department's chiefs would be exempt from receiving the dramatic cut to their hard-earned benefits. This special treatment to the people in power angered many of the Town's firemen and more men and women left the Department. Again, DeRosa's loyalty continued.

15.    In early 2012, as the pension cuts were being put into effect, Chief Atwater overheard four firefighters discussing the Town's unequal enforcement of the harsh pension cuts. DeRosa was one of those firefighters. Atwater did not take kindly to hearing the men question why these unfair policies were not also being applied to the chiefs. His dissatisfaction was reflected in the way that he thereafter treated DeRosa.

*The Urine Tests*

16.    The Town had instituted a new random drug and alcohol testing policy. On February 24, 2012, DeRosa was informed that he had been "randomly" selected to be the first firefighter required to provide a urine sample to be tested for drugs. DeRosa was happy to comply. As requested, he drove to the station immediately and agreed to submit to both a drug test and a

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 4 of 19

breathalyzer. His blood test was negative for alcohol. DeRosa was then asked to submit to a "random" urine test. He agreed. DeRosa was told by the nurse to empty his pockets and wash his hands. He was told to go into a private bathroom stall and urinate into a cup that she provided. DeRosa complied with all of the nurse's requests and provided the sample.

17.     On February 29, 2012, DeRosa was contacted by the physician's office and told that his urine sample had a high pH level. He was told that medication could effect a person's pH level and that he needed to provide them with a list of any medication that he was taking. DeRosa called his primary care physician and obtained a list of any medication that had been prescribed to him in the last eight months. DeRosa faxed the list of medications to the physician's office that same day.

18.     Pursuant to 49 CFR § 40.159, when an employee's urine sample is deemed invalid due to a high pH level, the testing facility must inquire into what medications a person was taking in order to determine whether that would explain the elevated pH level. DeRosa provided the physician's office with a list of those medications as requested.

19.     DeRosa, however, was ordered to provide a second sample and was told to report to the Town's clinic within the next two hours. DeRosa complied and arrived at the clinic forty five minutes later. Upon arrival, the clinic nurse, Marlene Rizzolo, informed DeRosa that the second test would be directly supervised by Chief Atwater.[1]

---

[1] The Code only requires that a second sample be required under direct supervision if the employee is unable to provide an explanation for the elevated pH or unable to provide a valid prescription for a medication that interfered with the immunoassay test.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 5 of 19

20.     Importantly, 49 CFR § 40.31 explicitly says the immediate supervisor of the person being tested may *not* supervise the urine collection unless no other collector is available. In direct violation of the Code of Federal Regulation, Atwater forced DeRosa to provide a second sample as Atwater watched DeRosa urinate in the cup.

21.     Neither Nurse Rizzolo nor Chief Atwater checked to see if anyone else was available to supervise the urine test that they were forcing DeRosa to submit to. Conversely, the nurse and the Chief determined that DeRosa should be forced to provide a urine sample while his direct supervisor stood next to him and stared at his exposed penis.

22.     DeRosa was extremely uncomfortable that he was being subjected to such humiliation at the hands of the Town and his supervisor, Atwater. DeRosa felt forced to perform this humiliating task in front of Atwater because he did not want his employment status to be impacted.

23.     Once Atwater arrived, DeRosa was handed a cup and directed to the bathroom by Nurse Rizzolo. DeRosa unzipped his pants, and Chief Atwater immediately looked down at DeRosa's penis. This continued for a period that DeRosa estimates was five minutes. DeRosa was so uncomfortable that he could not urinate. The nurse provided DeRosa with some water, and DeRosa was told again to attempt to provide a sample.

24.     Again, DeRosa was awkwardly forced to unzip his pants and show his penis to his supervising Chief. For a second time, DeRosa submitted to this humiliating task. He was finally able to provide another sample, and his drug test was negative. By this point, it was clear to DeRosa that Chief Atwater appeared to have it out for him.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 6 of 19

25.     DeRosa was incensed that his privacy had been violated in such an embarrassing and personal way. He complained to the Town's human resources department to ensure that this would not happen to the next person who was required to give a drug test. DeRosa was angry that he was forced to be humiliated by his supervisor instead of simply being observed by a trained medical professional. DeRosa filed a complaint related to the incident. DeRosa did not intend for anything to come of the issue. He simply wanted the procedure to be changed.

26.     The Human Resources Director, Kennie Wells, investigated the complaint and interviewed DeRosa, Atwater and the nurses involved. He asked the nurse for the written policy that the Town is supposed to follow. Importantly, she did not provide Mr. Wells with the portion of the Code of Federal Regulations that specifically prohibits someone in Chief Atwater's position from supervising DeRosa's test. Additionally, she did not provide Mr. Wells any explanation or policy explaining why the urine test could not have been performed the following day, when the Town doctor was available.

27.     Ultimately, Mr. Wells recommended that the Town Nurse needs to partner with a third party contractor to do the next drug test to avoid an awkward situation like DeRosa experienced.

*DeRosa's Injury and Workers' Compensation Claim*

28.     On July 10, 2013, DeRosa was at work at the fire station when he twisted his right ankle on a portion of the floor where large pieces of tile were missing. DeRosa immediately felt pain shooting into his ankle. He tried to ice the area, but the pain eventually got so bad that he felt he needed to inform his shift supervisor. The shift supervisor took a look at his ankle and saw that it was bruised and swelling. A First Report of Injury or Illness was completed by July 12, 2013.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 7 of 19

29.    DeRosa was told to go directly to urgent care for x-rays and to follow up with Dr.
Mohan Persaud, a physician who is contracted with the Town, on July 15, 2013. Dr. Persaud is a
gastroenterologist -- a stomach doctor -- not an orthopedic surgeon. Nevertheless, DeRosa
followed the direction of his supervisor and went directly to urgent care. Dr. Christopher Santora
examined him at the urgent care clinic and diagnosed DeRosa with a right ankle sprain. He was
told to use crutches 100% of the time and not to bear any weight on his right leg. They allowed
him to return to work so long as he followed these instructions. DeRosa also made an appointment
with Dr. Persaud, as his supervisor had instructed.

30.    DeRosa attempted to return to work the following day, but the pain was unbearable.
His ankle was dark purple and was still very swollen. He took personal time off of his shift and
was not scheduled to work the following day. He rested at home all day and waited for his
appointment with Dr. Persaud.

31.    On July 15, DeRosa went to Dr. Persaud's office. He had his friend drive him there.
Dr. Persaud advised him that he had a mild sprain and directed him to report for light duty the
following day. DeRosa informed Dr. Persaud that he was experiencing much more pain than one
would expect if he simply had a mild sprain. DeRosa asked the doctor whether he should see a
specialist. Dr. Persaud responded by saying, "If I send you to a specialist with this simple sprain,
they will laugh you out of the office. If you lower your BMI and had less weight on your ankle,
you would be less likely to sprain it." DeRosa's friend that accompanied him to the appointment
also heard these statements.

32.    The pain continued to get worse. DeRosa was having a very difficult time walking
and could not put any weight on his ankle. He was forced to use his personal vacation days to

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 8 of 19

recover since Dr. Persaud would only put him on light duty. Two days later, he called Dr. Persaud's

office and pleaded with Dr. Persaud to send him for magnetic resonance imaging (an MRI). Dr.

Persaud reluctantly agreed.

33.     The MRI showed that DeRosa had ligament damage in his ankle and a much more

severe sprain that Dr. Persaud had indicated. He sent DeRosa to Dr. Joel Cohen, an orthopedic

surgeon, to evaluate and treat his injury.

34.     DeRosa got the first appointment available at Dr. Cohen's office. On July 18, 2013,

he showed Dr. Cohen his ankle. Dr. Cohen placed him on full leave and told him to come back in

two weeks. Additionally, he instructed DeRosa to use crutches and an air cast as needed and to

take Advil for pain.

35.     Dr. Persaud followed up with Dr. Cohen's office and learned that the surgeon

diagnosed DeRosa with an ankle sprain and ordered DeRosa not to return to work until he was

cleared by Dr. Cohen.  Dr. Persaud was advised that Dr. Cohen directed DeRosa to go "home, ice,

rest, elevate the extremity. No work." Dr. Persaud wrote Dr. Cohen's orders in his own notes.

Additionally, he advised Atwater and Temme of Dr. Cohen's orders.

36.     During the next few days, DeRosa rested at his home and kept his foot elevated. He

applied ice to his ankle every few hours and took Tylenol for the pain and inflammation. His ankle

was still very painful, but it was becoming more bearable as the days passed.

*The Retaliation, Prosecution, and Termination*

37.     Without DeRosa's knowledge, Atwater, Temme, and Lisa Battershall, the Town's

Claims Adjuster, arranged a meeting where they decided to have DeRosa followed by a private

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 9 of 19

investigator. At the time, DeRosa was only two or three days into his physician-mandated two

week long medical leave. All three of them decided that they would have DeRosa secretly

videotaped from July 25 through August 9, 2013. Since DeRosa was in his home with a severely

sprained ankle for much of this time, the investigator was only able to get approximately 9 minutes

of film during that two-week time period. As requested, the investigator promptly brought the film

back to Chief Atwater and Ms. Battershall.

38.     Although DeRosa's injury had already been substantiated by two doctors, one of

whom was an orthopedic surgeon, Atwater decided to conduct a formal investigation to determine

whether DeRosa was "fraudulently" taking time off work under the guise of an on-the-job injury.

39.     Approximately fifteen days after DeRosa was first injured, the private investigator

began filming DeRosa. According to the Town's investigation, DeRosa was seen on the video

walking in a "normal fashion" and wearing flip flops without any supportive device. Importantly,

Dr. Cohen never required that DeRosa wear a supportive device at all times.

40.     On August 2, 2013, DeRosa returned to Dr. Cohen's for his scheduled appointment.

Dr. Cohen's notes reflect that DeRosa was suffering from a "severe ankle sprain." They also said

that DeRosa reported that he is "50% better" and "improving." Additionally, DeRosa told the

doctor that he was experiencing "decreased pain" and "decreased swelling." Although DeRosa

told the doctor that he was feeling much better, Dr. Cohen initially indicated that he wanted

DeRosa to take two more weeks off work in order for the sprain to fully heal; DeRosa asked that

it be reduced to only one week. Dr. Cohen also recommended that DeRosa use an air cast to help

with the pain. He scheduled DeRosa's next appointment for August 9, 2013.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 10 of 19

41.     On August 5, 2013, Nurse Rizzolo called DeRosa to see when he would be able to return to work. DeRosa responded that the ankle was still painful but getting better. She asked him to come back in to be evaluated by Dr. Persaud. DeRosa agreed to come into see the doctor two days later.

42.     DeRosa presented at Dr. Persaud's office on Wednesday, August 7, 2013, and informed the doctor that he was no longer in need of anti-inflammatory medication and was experiencing no pain that day. Dr. Persaud's lists his impression as "recovering from [right] ankle sprain" and he recommended that he continue with soft cast, take anti-inflammatories as needed, and go to his next appointment with Dr. Cohen.

43.     On August 9, 2013, DeRosa met with Dr. Cohen and asked to return to work. Dr. Cohen agreed, if DeRosa would wear the air cast. Dr. Cohen's notes indicate that DeRosa told him he was feeling much better. DeRosa was eager to get back to the job he loved. Dr. Cohen cleared DeRosa to return to work on August 13, 2013. However, on the "release from disability form," Dr. Cohen said DeRosa was still not well enough to go back to "regular duty without restrictions" due to a ligament tear on his right ankle. He scheduled DeRosa for a follow up appointment on August 23, 2013.

44.     DeRosa requested to be put back on the shift rotation and reported to work for his next scheduled shift on August 13, 2013.

45.     Although DeRosa was already back to work, Chief Atwater decided that he and Karen Temme should have the video surveillance reviewed by Dr. Cohen to see if he would agree that DeRosa was faking an injury and had committed workers' compensation fraud during the

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 11 of 19

three weeks that he was out of the office. Ms. Battershall sent Dr. Cohen a letter asking him to view the video footage. Dr. Cohen refused to participate in the trio's attempt to have DeRosa fired.

46.     The (over)reaction of the Town, and its employees, to DeRosa's injury stands in stark contrast to its handling of another firefighter investigated for workers' compensation fraud several months earlier. The other firefighter had claimed a knee injury. He was then videotaped coaching baseball, jumping out of his truck while "mudding" to fix a tire, and running. He was out of work for over three months. Chief Atwater decided that the appropriate sanction in that case was a one-day suspension and a letter of admonition. But, for DeRosa, Atwater and Temme chose to pursue felony charges and termination.

47.     Frustrated with Dr. Cohen's lack of participation in their scheme to get DeRosa terminated, Atwater and Temme held a private meeting with Dr. Persaud. They asked Dr. Persaud to watch the video to make a determination whether DeRosa was committing workers' compensation fraud by being out of work for three weeks—as his orthopedic surgeon had ordered. Dr. Persaud watched the video in the presence of Atwater and Temme.

48.     After reviewing the video, Dr. Persaud said that he would be willing to write an affidavit for Atwater and Temme saying that DeRosa was essentially faking his injury. He pointed out that, two to three weeks after the injury, DeRosa occasionally walked around without a brace or crutch. In making his determination, Dr. Persaud admits that the only two things he reviewed in coming to this conclusion were the nine-minute video, which he reiterates was ordered by the Town, and the short transcript from the man holding the video camera. **Shockingly, Dr. Persaud never even bothered to review the records from the urgent care facility or from Dr. Cohen, the orthopedic surgeon that Dr. Persaud put in charge of DeRosa's care.** Further, Dr. Persaud

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 12 of 19

never bothered to pick up the phone and discuss DeRosa's progress with Dr. Cohen or find out what limitations or restrictions Dr. Cohen had placed on DeRosa. Had he done so, Dr. Persaud would have easily learned that DeRosa was not required to walk with a brace or a crutch at all times. Instead, Dr. Cohen had actually written in his notes that DeRosa was "50% better," that DeRosa "reports improvement" and that Dr. Cohen simply recommended an air cast. Dr. Cohen never even prescribed DeRosa a "brace."

49.     Shortly after the Persaud affidavit, DeRosa was placed on investigative leave, during which he was not permitted to work as a firefighter.

50.     The Town presented its incomplete and inaccurate information regarding DeRosa to Florida Department of Financial Services, Fraud Division, which executed a Probable Cause Affidavit for a charge of Workers' Compensation Fraud, a third-degree felony. On December 5, 2013, the State Attorney's Office filed a formal Information against DeRosa on that charge.

51.     DeRosa was arrested and incurred substantial attorneys' fees in defending the criminal case. The criminal case also led to publication of his mug shot and other public attention that caused DeRosa embarrassment and humiliation.

52.     As a direct consequence of the Town's allegations and the criminal charge, DeRosa was terminated in January 2014.

### The Trial and Acquittal

53.     DeRosa was repeatedly offered plea bargains to resolve the criminal charge. He refused all such offers.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 13 of 19

54.    On January 26, 2016, following the State's presentation of its case, Palm Beach County Circuit Judge John Kastrenakes entered a Judgment of Acquittal ("JOA") in favor of DeRosa. A true and correct copy of the JOA is attached as Exhibit A.

### The Impact and Aftermath

55.    DeRosa lost his certifications required to work as a Firefighter or Paramedic, such as CPR, Basic Life Support, Advanced Cardiac Life Support, Pediatric Advanced Life Support, and International Trauma Life Support, because he could not take the necessary courses with an open felony charge. He was also unable to apply for any other Florida state business licenses.

56.    DeRosa was forced to move back in with his parents and take jobs cleaning homes, digging holes for fence posts, and delivering flowers while the criminal case was pending. He now struggles in a relative's real estate business to make a fraction of what he earned as a firefighter.

57.    Despite the vindication of his acquittal, this ordeal has left DeRosa with deep mental and emotional scars that hinder him on a daily basis. His personal relationships have been impacted. He has seen a number of therapists to deal with depression and related emotional issues and their ongoing side effects.

### The Prelude to Suit

58.    Attached as Exhibit B is a true and correct copy of a presuit notice of claim delivered to the Town.[2]

---

[2] In the presuit notice of claim, DeRosa's Social Security number and date of birth were provided. They have, however, been redacted from the copied attached hereto.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 14 of 19

59.     All conditions precedent to suit have occurred, been performed, been waived, or been excused.

60.     DeRosa has retained the undersigned law firm and agreed to pay a reasonable attorneys' fee, plus costs and expenses, for services rendered.

### COUNT I: WORKERS' COMPENSATION RETALIATION (F.S. 440.205)
### (v. The Town)

61.     DeRosa incorporates paragraphs 1 through 60.

62.     DeRosa, by filing a workers' compensation claim engaged in statutorily protected activity under Chapter 440 of the Florida Statutes.

63.     DeRosa was subjected to adverse employment actions by the Town.

64.     There was a causal relationship between the protected activity and the adverse employment actions.

65.     As a direct and proximate result of the Town's acts of retaliation, DeRosa suffered damages, including but not limited lost wages, termination, loss of earning capacity, loss of certifications and EMT licenses, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life. His damages are permanent and continuing.

WHEREFORE, DeRosa asks that this Court enter judgment against the Town for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 15 of 19

## COUNT II: MALICIOUS PROSECUTION
(v. Atwater and Temme)

66.     DeRosa incorporates paragraphs 1 through 60.

67.     There was an original criminal judicial proceeding commenced against DeRosa.

68.     Atwater and Temme were the legal cause of the proceeding.

69.     The JOA constitutes a bona fide termination of that proceeding in DeRosa's favor.

70.     There was an absence of probable cause for the criminal proceeding.

71.     There was malice on the part of Atwater and Temme in how they initiated and conducted the investigation into DeRosa and presented incomplete, inaccurate, and intentionally misleading information to the Department of Financial Services and, ultimately, the State Attorney's Office.

72.     As a direct and proximate result of the malicious prosecution, DeRosa has suffered damages, including but not limited to lost wages, termination, loss of earning capacity, loss of certifications and EMT licenses, loss of liberty, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life. His damages are permanent and continuing.

WHEREFORE, DeRosa asks that this Court enter judgment against Atwater and Temme, jointly and severally, for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just. DeRosa reserves the right to amend to add a claim for punitive damages.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 16 of 19

## COUNT III: FALSE ARREST/FALSE IMPRISONMENT
### (v. The Town)

73.     DeRosa hereby incorporates paragraphs 1 through 60.

74.     The Town, through its employees acting in the scope of their employment, and without malice, instigated the arrest of De Rosa.

75.     De Rosa was thereafter unlawfully imprisoned and/or detained contrary to his will.

76.     As a direct and proximate result of his false imprisonment/false arrest, DeRosa has suffered damages, including but not limited to including but not limited lost wages, termination, loss of earning capacity, loss of certifications and EMT licenses, loss of liberty, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life. His damages are permanent and continuing.

77.     WHEREFORE, DeRosa asks that this Court enter judgment against the Town for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just.

## COUNT IV: FALSE ARREST/FALSE IMPRISONMENT
### (v. Atwater and Temme)

78.     DeRosa hereby incorporates paragraphs 1 through 60.

79.     Atwater and Temme, acting with malice, instigated the arrest of De Rosa.

80.     De Rosa was thereafter unlawfully imprisoned and/or detained contrary to his will.

81.     As a direct and proximate result of his false imprisonment/false arrest, DeRosa has suffered damages, including but not limited to including but not limited lost wages, termination, loss of earning capacity, loss of certifications and EMT licenses, loss of liberty, pain and suffering,

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 17 of 19

mental anguish, emotional distress, and loss of capacity for the enjoyment of life. His damages are permanent and continuing.

WHEREFORE, DeRosa asks that this Court enter judgment against Atwater and Temme, jointly and severally, for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just. DeRosa reserves the right to amend to add a claim for punitive damages.

<u>COUNT V: CIVIL RIGHTS VIOLATIONS</u>
(v. Atwater and Temme)

82.    DeRosa hereby incorporates paragraphs 1 through 60.

83.    Atwater and Temme acted within the scope of their employment for the Town and under color of state law.

84.    Each of them personally participated in retaliating against DeRosa for exercising his right of free speech by criticizing the Town's pension and benefits cuts, which was a matter of public concern.

85.    Atwater and Temme knew, or should have known, that their actions violated DeRosa's clearly established rights under the First and Fourteenth Amendments.

86.    As a direct and proximate result of the Atwater's and Temme's conduct, DeRosa suffered damages, including but not limited lost wages, termination, loss of earning capacity, loss of certifications and EMT licenses, pain and suffering, mental anguish, emotional distress, loss of capacity for the enjoyment of life, and loss of his federal constitutional rights. His damages are permanent and continuing.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 18 of 19

WHEREFORE, DeRosa asks that this Court enter judgment against Atwater and Temme, jointly and severally, for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just. DeRosa reserves the right to amend to add a claim for punitive damages.

### COUNT VI: CIVIL RIGHTS VIOLATIONS
(v. The Town)

87.     DeRosa hereby incorporates paragraphs 1 through 60 and 83 through 85.

88.     Atwater and Temme, individually or collectively, were delegated final policymaking authority with regard to DeRosa's employment status. Alternatively, their decisions regarding DeRosa, and the reasons for them, were ratified by the final policymaker for the Town.

89.     The Town is therefore liable for the violation of DeRosa's clearly established rights under the First and Fourteenth Amendments.

WHEREFORE, DeRosa asks that this Court enter judgment against the Town for compensatory damages, attorneys' fees, costs, and pre- and post-judgment interest, and award such further relief as may be just.

### COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(v. The Town)

90.     DeRosa hereby incorporates paragraphs 1 through 60.

91.     The Town owed a duty of care to DeRosa to conduct a fair and reasonable investigation of any suspicions or allegations that DeRosa had engaged in any criminal wrongdoing before instigating his arrest.

DeRosa vs. Town of Palm Beach, et al.
Complaint
Page 19 of 19

92.    The Town, through its employees acting in the scope of their employment, negligently instigated the arrest of De Rosa.

93.    DeRosa suffered a physical impact when he was arrested.

94.    DeRosa has also suffered great emotional distress in connection with his arrest, including but not limited to pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life. His damages are permanent and continuing.

WHEREFORE, DeRosa asks that this Court enter judgment against the Town for compensatory damages, costs, and pre- and post-judgment interest, and award such further relief as may be just.

### JURY TRIAL DEMAND

DeRosa hereby demands trial by jury of all issues so triable.

DATED this 29th day of September, 2016.

*/s/ Jack Scarola*
JACK SCAROLA
Florida Bar No.: 169440
ANDREA R. ROBINSON
Florida Bar No.: 85331
Attorney E-Mail: jsx@searcylaw.com &
mcp@searcylaw.com
Primary E-Mail: _scarolateam.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9441
Attorneys for Plaintiff Jeremy DeRosa

IN THE CIRCUIT COURT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CRIMINAL DIVISION

CASE NO. 2013CF012662AXXX

STATE OF FLORIDA

vs

Jeremy Devin Derosa

**FILED**
Circuit Criminal Department
JAN 2 6 2016
SHARON R. BOCK
Clerk & Comptroller
Palm Beach County

**JUDGMENT OF ACQUITTAL**

You, Jeremy Devin Derosa _____, being now before the Court,
attended by your attorney, Michael Salnick, Esq _____
(or knowing and understanding your right to an attorney, but having waived your right to be
represented by an attorney), and the Court having found there is not sufficient evidence to
submit the cause to the Jury on the charge of: ① Worker's Compensation Fraud

_____

_____

_____

_____

now therefore, I ADJUDGE YOU to be NOT GUILTY of the above offense or offenses.

DONE AND ORDERED in Open Court, this 26 day of January, 2016
at West Palm Beach, Palm Beach, County, Florida

_____
Circuit Court Judge

EXHIBIT "A"



SEARCY
DENNEY
SCAROLA
BARNHART
&SHIPLEY PA
*Attorneys*
*at Law*

■ WEST PALM BEACH OFFICE:

2139 PALM BEACH LAKES BLVD.
WEST PALM BEACH, FLORIDA 33409

P.O. BOX 3626
WEST PALM BEACH, FLORIDA 33402

(561) 686-6300
1-800-780-8607
1-800-220-7006 Spanish

□ TALLAHASSEE OFFICE:

THE TOWLE HOUSE
517 NORTH CALHOUN STREET
TALLAHASSEE, FL 32301-1231

(850) 224-7600
1-888-549-7011

ATTORNEYS AT LAW:

ROSALYN SIA BAKER-BARNES
*F. GREGORY BARNHART
T. HARDEE BASS, III
LAURIE J. BRIGGS
*BRIAN B. DENNEY
BRENDA S. FULMER
*MARIANO GARCIA
*JAMES W. GUSTAFSON, JR.
MARA R. P. HATFIELD
ADAM S. HECHT
JACK P. HILL
KELLY HYMAN
CAMERON M. KENNEDY
WILLIAM B. KING 8
MICHAEL H. KUGLER
DARRYL L. LEWIS 1
PABLO PERHACS 4 6
PATRICK E. QUINLAN 7
EDWARD V. PICCI
ANDREA A. ROBINSON
*JOHN SCAROLA
MATTHEW K. SCHWENCKE
CARTER W. SCOTT
*CHRISTIAN D. SEARCY
*JOHN A. SHIPLEY III
CHRISTOPHER K. SPEED 2 3
KAREN E. TERRY
DONALD J. WARD III 5
*C. CALVIN WARRINER III

OF COUNSEL:
*EARL C. DENNEY, JR 3

SHAREHOLDERS
*BOARD CERTIFIED

ALSO ADMITTED
1 KENTUCKY
2 MARYLAND
3 MISSISSIPPI
4 MONTANA
5 NEW JERSEY
6 NEW YORK
7 VIRGINIA
8 WASHINGTON DC

PARALEGALS

VIVIAN AYAN-TEJEDA
NICHOLAS F. DISBULLIS
EMJIO DIMANTIS
RANDY M. DUFRESNE
DAVID M. GILMORE
JOHN E. HOPKINS
VINCENT L. LEONARD, JR
ROBERT W. PITCHER
CHRIS R. RODGERS
KATHLEEN SIMON
STEVE H. SMITH
BONNIE S. STARK
WALTER A. STEIN

May 17, 2016

Town of Palm Beach
345 South County Road
Palm Beach, FL 33480

VIA CERTIFIED MAIL
Certified Article Number
9414 7266 9904 2058 5617 81
SENDERS RECORD

RE:   DeRosa, Jeremy vs. Town of Palm Beach
      Our File No.: 20160272

## PRE-SUIT NOTICE OF CLAIM
## PURSUANT TO FLORIDA STATUTE 768.28(6)(a)

Dear Sir or Madam:

Claimant, Jeremy DeRosa, pursuant to Florida Statutes §768.28, hereby provides notice of their intent to initiate litigation against The Town of Palm Beach if the matter cannot be fully resolved within the next six months, and states:

Claimant:         Jeremy DeRosa

Address:          14341 Blackberry Drive
                  Wellington, FL  33414

S.S.N.:           ██████████ 1

D.O.B.:           ██████████

Place of Birth:   Brooklyn, NY

Court:            Palm Beach County Circuit Court

---

1 Pursuant to the Florida Constitution, the Florida Public Records Law, the Florida Rules of Judicial Administration, and any other applicable State or Federal Law, Claimants ask that all information regarding dates of birth and/or Social Security numbers be redacted from this notice letter before any disclosure hereof



WWW.SEARCYLAW.COM

EXHIBIT "B"

May 17, 2016
Page 2

Based upon the best knowledge of the Claimant, there are no known prior adjudicated unpaid claim in excess of $200.00 known at this time.

The claim arises out of the wrongful termination of, discrimination against, retaliation against, invasion of privacy of, and malicious prosecution of Jeremy DeRosa by the Town of Palm Beach, Chief Brodie Atwater, and the Town's risk manager. Additionally, the Plaintiff also plans to file a claim against the all of the parties for governmental intrusion and abuse of process.

Pursuant to Florida Statute §627.4137 and Florida Statute 119.07, please provide the undersigned with the following information with regard to each known policy of insurance, including excess or umbrella insurance.

    a.    The name of each insured;

    b.    The limits of liability coverage, including coverage for §1983 claims:

    c.    A statement of any policy or coverage defense which said insurer
          reasonably believes is available to said insurer at the time of
          filing such statement; and

    d.    A copy of the insurance policy including the application.

    e.    Copies of any statement(s) made by any party or witness
          including my client, and all laser copies of photographs with
          regard to the above-referenced incident.

Additionally, please advise as to the name and coverage of any and all other insurers for the above named insured that might provide excess or additional coverage.

Further, pursuant to Florida Statute §627.4137(2) you are reminded of the obligation to furnish an immediate amendment to the statement sought herewith in the event that any facts are discovered that call for an amendment.

The undersigned is willing to reasonably assist you in your investigation of this claim in the hope that it can be resolved prior to the expiration of the statutory ninety day notice period.



May 17, 2016
Page 3

If you believe that any information required by Florida Statute §768.28 has been omitted from this letter, or that this notice is in any way statutorily deficient, please notify me at once.

In the event that the Town of Palm Beach denies this claim and/or does not act upon the notice before the expiration of the statutory ninety day notice period, Claimant will file a lawsuit for wrongful termination.

Sincerely yours,

ANDREA A. ROBINSON
AAR/srm